JOHN J. FITZGERALD vs. ALBERT E. NICKERSON.

THOMAS J. DORNEY vs. SAME.

APRIL 27, 1921.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)  Garnishment.  Property in hands of Police Officer.*

Property taken from a prisoner at the time of his arrest by an officer, to be used if necessary as evidence in the criminal proceedings, is subject to garnishment in the hands of such officer, where there is no collusion between the creditors and the officer.

REPLEVIN.  Heard on exceptions of defendant interveners and sustained.

VINCENT, J.  About October 1, 1914, several men, accused of breaking and entering the stores of the Louis K. Liggett Company and the Regal Shoe Company in Providence, were arrested in New London, Connecticut, and brought back.  Certain property found in the possession of these men was taken from them at the time of their arrest and later turned over to the defendant Albert E. Nickerson, then chief police inspector for the city of Providence.  This property consisted of a Pierce-Arrow automobile, one dress suit case full of burglars' tools, one automobile trunk, six hats, five pairs of shoes, one robe, one overcoat, three rain coats, three dress suit cases, one bundle containing wearing apparel and other personal effects, four jack-knives, one ring, three pencils, one fountain pen, one nickel watch, one diamond horseshoe pin, eleven diamonds, and $675.12 in money.

This property was retained by Nickerson for use as evidence in the criminal proceedings.  The men arrested were later indicted, tried, found guilty, sentenced, and committed to the state prison.

On October 2, 1914, immediately following the arrest of these men at New London and their return to Providence, the Louis K. Liggett Company and the Regal Shoe Company each brought an action against them and attached

their personal property in the hands of Nickerson. The writ of attachment in the Liggett case was served October 22, 1914, and in the case of the Regal Company on October 23, 1914.

Subsequent to these attachments, bills of sale were executed by these men transferring their interest in the automobile, its accessories and contents, to Mr. Fitzgerald; and in the remaining property to Mr. Dorney. The exact dates of these bills of sale do not appear and are not important as it is undisputed that they were executed after the attachments.

On February 17, 1915, Mr. Fitzgerald brought an action of replevin against the defendant Nickerson for the recovery of the automobile and its accessories. Service of the writ was made on March 22, 1915, the deputy sheriff charged with such service having been furnished by Mr. Fitzgerald with the following order and release.

"March 22, 1915

*To Police Department of City of Providence:*

GENTLEMEN: Please deliver to Herman Paster, Deputy Sheriff, 'Pierce Arrow Automobile', also trunk, 2 extra tires & rims, suit cases, robe & all attachments owned by me. Mr. Paster has a Bill of Sale which he will show you if you so desire.

Very truly yours,

JOHN J. FITZGERALD.

March 22, 1915

The above mentioned property is hereby ordered released from the custody of law.

GEORGE T. BROWN
*Justice of the Superior Court.*"

On March 15, 1915, Mr. Dorney brought an action of replevin against Nickerson to recover the balance of the property not covered in the suit of Mr. Fitzgerald, the service of the writ occurring on the following day, March 26,

1915. In the case of Mr. Dorney, the deputy sheriff was furnished with a release as follows.

"State of Rhode Island                    Superior Court
Providence, Sc.

Indictments-    State of Rhode Island    No. 8239 and 8240
No 8239 and                *vs.*
No 8240          Edward F. Tate alias Raymond W. Staley,

Joseph T. Baird alias Joseph T. Brady, Albert C. Percival alias Burnside McCullin alias David Hendricks Leonard C. Maynard alias and Michael P. Devlin alias

In the above mentioned two indictments No 8239 and No 8240 all the personal property belonging to each and all said defendants and now in the custody of the State of Rhode Island is hereby released.

March 26, 1915        GEORGE T. BROWN
                    *Justice of the Superior Court.*"

In each of these cases the articles enumerated in the writs were obtained from the defendant Nickerson and turned over by the officer to the respective plaintiffs.

In both cases the defendant Nickerson filed three pleas, first the general issue, second a general denial of the plaintiffs' claims, and third a special plea setting forth that the defendant had taken the personal property in question from certain persons who had been arrested and held them as articles that might be needed as evidence in the criminal proceedings; and that while having possession of such articles a writ of attachment in the two law cases then pending had been served upon him as trustee; and that the plaintiffs' only claims to the title were by virtue of bills of sale from the persons arrested made after the writs of attachment had been served.

To the special plea the plaintiff in each of the replevin cases filed a demurrer on the ground that the attachments were not valid because the goods and chattels at the time of such attachments were in the custody of the law. This

demurrer, after hearing, was sustained by the Superior Court and to this ruling the defendant excepted.

On November 23, 1915, the Louis K. Liggett Company and the Regal Shoe Company filed a motion asking for leave to intervene in the replevin suits for the purpose of protecting their attachments, which motion was granted.

After being permitted to intervene, the interveners adopted and confirmed the pleas previously filed by the defendant Nickerson and filed an additional plea in their own behalf, entitled "Plea of the Interveners," setting forth that the goods and chattels replevied were on October 22, 1914, in possession of defendant Nickerson as the goods and chattels of Percival, Maynard, and others, the men who had been arrested; that writs of attachment had been duly served on said defendant as garnishee in the suits of the Liggett and Regal companies; that said goods and chattels were afterwards replevied from the said defendant Nickerson, the plaintiffs claiming title thereto by virtue of bills of sale made subsequent to the service of said writs of attachment; and praying that said goods and chattels be delivered to the officer charged with the service of the attachment writs to be held by him to await the determination of the actions brought by the Liggett and Regal companies.

To this plea the plaintiffs demurred on the same ground as before and the demurrer was overruled. Thereupon the plaintiffs filed a replication to the plea of the interveners and to that the interveners demurred which was also overruled and the interveners excepted. Thereafter the interveners filed a rejoinder to the plaintiffs' replication and joined issue on the fact whether or not the Superior Court had released from its custody the goods and chattels replevied at the time that the two replevin suits had been instituted. Later, testimony on this point was introduced, certain exhibits were put in evidence and stipulations entered into as to evidence, as appears from the transcript of testimony. The trial justice decided in favor of the plaintiffs for possession and ten cents damages.

To this decision the defendant interveners excepted and now come before this court on their bills of exceptions.

"1.    To a certain ruling of said Justice made on October 29, 1915, sustaining the plaintiff's demurrer to the defendant Nickerson's third plea.

"2.    To a certain ruling of said Justice made on January 15, 1918, sustaining the plaintiff's demurrer to the defendant Nickerson's fourth plea.

"3.    To a certain ruling of said Justice made on November 4, 1919, overruling the interveners' demurrer to the plaintiff's replication to the interveners' plea.

"4.    To the said decision of said Justice made at the trial of said case on September 21, 1920, in favor of the said plaintiff."

The two questions which appear to be essential for our consideration in determining the present controversy are (1) At the time of the attachments in the suits of the Liggett and Regal companies, was the property in question *in custodia legis* so as to render such attachments void, and (2) Can the plaintiffs, claiming title under bills of sale made subsequent to the attachments, maintain their actions of replevin?

(1)    It is not disputed that the property in question belonged to the persons who had been arrested; that it had been taken from them by police officers at New London and by them turned over to the defendant Nickerson, chief inspector of police in Providence, by whom the same was held in case it should be needed as evidence in the criminal proceedings.    Under these conditions the Liggett and Regal companies brought their suits against the owners of the property for the purpose of reimbursing themselves for the losses which they had suffered and attached the personal estate of the defendants in such suits in the hands of Nickerson.    The plaintiffs' only claim of title to this property is based upon certain bills of sale which were executed by the owners thereof subsequent to the service of the writs of attachment.    The property appears to have been taken in

good faith and retained with the belief that it might be needed later as evidence. There is nothing from which an inference can be drawn that this property was taken or retained by the officers for the benefit or convenience of, or in collusion with, the two attaching companies.

The officers doubtless were justified in retaining this property for the purpose of evidence and for such purpose it may be said to have been *in custodia legis* but such custody did not change or affect the title thereto. By Section 30, Chapter 354, General Laws, 1909, it is provided that, "All property, money or estate taken or detained as evidence in any criminal cause shall be subject to the order of the court before which the complaint or indictment shall be brought or pending, and shall, at the termination thereof, be restored to the rightful owner."

The plaintiffs argue that the garnishment of these articles might interfere with their use at the trial; that public officers should be saved from the vexation and annoyance of incidental litigation; and that such garnishment, if held to be valid, might induce collusion between creditors and police officers.

We fail to see any force in these contentions. In the first place the garnishment neither removes the property from the possession of the garnishee nor prevents its production and use as evidence in the criminal proceedings against the owners. Were it otherwise the section of the statute above quoted makes all such effects subject to the order of the court until the termination of the proceedings. The fact that the property in the possession of the garnishee could not be seized under attachment or execution, because temporarily subject to the order of the court, does not prevent the charging of the garnishee in respect thereto because he can hold it until such time as he is permitted to deliver it. Drake on Attachment, 6th Ed., Sec. 464.

The garnishee is required by law to make an affidavit disclosing what property of the defendant he had in his hands and possession at the time of the attachment and for

that he receives the statutory fee. The performance of this duty cannot be said to be a vexation and annoyance any more than the compliance with any other law might be vexatious and annoying but, however that may be, the garnishment in no way defeats the ends of justice by rendering unavailable any evidence which the property taken from criminals might supply.

As we have said before, there is no evidence of any collusion between creditors and officers in the present cases. In cases where such collusion is shown the authorities clearly point out that the attachment would be void and, therefore, any consideration of the question on the ground of public policy is unnecessary.

While there is some conflict of authorities, we think, as stated in 20 Cyc. 1025, that, "The better rule seems to be that money or other property taken from the person of a prisoner at the time of his arrest by an officer, upon the belief that it is connected with the crime charged, or might be used by the prisoner in effecting his escape, is subject to garnishment in the hands of such officer."

In *Reifsnyder* v. *Lee*, 44 Iowa 101, a case where money and valuables had been taken by an officer from a person arrested for larceny, the court held that they were liable to garnishment in a civil action against the prisoner by the party who had suffered loss. The court said in its opinion, "It is our conclusion that the money and watch in question were lawfully taken from Lee by the officers, and when the garnishment process was served upon Gray, were lawfully in his possession. We cannot convert the rules of law, intended for the protection of the person and property of the citizen, into instruments by which thieves and other felons may conceal their crimes and resist police officers in honest and commendable efforts to bring them to justice."

In *Closson* v. *Morrison*, 47 N. H. 482, it was held that money taken from a prisoner in good faith was subject to attachment in the hands of the officer taking the same and the court in its opinion said, "If this property had been

separated from the person of the prisoner, or taken from his dwelling house, under authority of law, it is separated from his person and out of his house for all purposes. If this defendant rightfully and lawfully holds possession of the property in question, without having used force or fraud to obtain it, then when a writ is put into his hands, he may properly and lawfully attach it."

We think that the garnishments of the Liggett and Regal companies are valid and that the plaintiffs' replevin suits cannot be maintained.

The defendant interveners' exceptions numbered 2 and 4 are sustained. The other exceptions of the defendants do not require consideration. As the conclusions which we have reached are decisive of the cases, the plaintiffs may appear before this court, if they shall see fit, on Wednesday, May 4, 1921, at nine o'clock A. M., Standard Time, and show cause, if any they have, why these cases should not be remitted to the Superior Court with direction to enter judgment for return and restoration, ten cents damages, and costs.

*Fitzgerald & Higgins. William H. Camfield*, for plaintiffs.
*Gardner, Moss & Haslam*, for defendants.